UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | |
|---|---|
| IN RE | CHAPTER 7 |
| FRANCINE KEAHON | CASE NO. 26-22625-shl |
| | JUDGE: Sean H. Lane |
| DEBTOR | |

**PLEASE TAKE NOTICE** that upon the annexed affirmation of the undersigned of the law firm of LOGS Legal Group LLP, attorneys for NewRez LLC d/b/a Shellpoint Mortgage Servicing as Servicer for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-J5, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-J5 ("Movant") will move this Court as set forth below:

| | |
|---|---|
| JUDGE: | HON. Sean H. Lane |
| RETURN DATE & TIME: | November 6, 2026 at 10:00 am |
| COURTHOUSE: | One Bowling Green, Courtroom 701, New York, NY 10004 |
| RELIEF REQUESTED: | The proposed order will seek to vacate the automatic stay imposed by 11 U.S.C. § 362(a) upon the property generally described as 35 Parker Avenue, New City, New York 10956-1722, pursuant to 11 U.S.C.§ 362(d)(1) based upon the total debt due to Movant, resulting in Movant's lack of adequate protection or, pursuant to 11 U.S.C.§ 362(d)(2), in as much as the estate has no equity in the aforementioned property. |

**PLEASE TAKE FURTHER NOTICE,** that answering affidavits, if any, to the relief requested, must be served upon and received by LOGS Legal Group LLP at their offices at 175 Mile Crossing Boulevard, Rochester, NY 14624 and filed with the Clerk of the United States Bankruptcy Court for the Southern District of New York at One Bowling Green, Courtroom 701, New York, NY 10004 no later than seven (7) days prior to the return date of this motion.

**PLEASE TAKE FURTHER NOTICE** that any appearance on the within application will be held via audio, Zoom or in person at the direction of the Judge. All parties are required to register for the hearing at least two days prior to the scheduled hearing by using the Court's ecourt Appearances Platform: https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl.

If for some reason you are not able to use the eCourt Appearances platform you must email the Courtroom Deputy at least two (2) business days prior to the hearing and state that a reasonable effort to use the platform has been made. You must include your name, the case number(s), who you represent if you are an attorney, and the date of the hearing. **Your email must include in the Re line "I am not able to register using eCourt Appearances."** You will then be provided with the dial in / log in information. If you do not have internet access you may call the courtroom deputy with this information.

Dated: October 9, 2026

/s/ Michael Chatwin

Michael Chatwin
Robert W. Griswold
Shari S. Barak
LOGS Legal Group LLP
Attorneys for NewRez LLC d/b/a Shellpoint Mortgage Servicing as Servicer for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-J5, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-J5
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000
Fax: (585) 247-7380

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS NOTICE IS REQUIRED BY THE PROVISIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT AND DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES.**

TO: SERVICE LIST

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | |
|---|---|
| IN RE | CHAPTER 7 |
| FRANCINE KEAHON | CASE NO. 26-22625-shl |
| | JUDGE: Sean H. Lane |
| DEBTOR | |

**AFFIRMATION IN SUPPORT OF**
**ENTRY OF AN ORDER GRANTING**
**RELIEF FROM THE AUTOMATIC STAY**

The undersigned, an attorney at law duly admitted to practice before the Courts of the State of New York and the U.S. District Court for the Southern District of New York, hereby affirms the following to be true under penalty of perjury:

1. I am an attorney with the law firm of LOGS Legal Group LLP, attorneys for NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2006-J5, Mortgage Pass-Through Certificates, Series 2006-J5 ("Movant"), a secured creditor of Francine Keahon ("Debtor"). As such, I am fully familiar with the facts and circumstances of this case.

2. I make this Affirmation in support of the within request for an Order Granting Relief from the automatic stay, for cause, pursuant to 11 U.S.C. § 362(d)(1) and (2).

3. Jurisdiction is conferred on this Court by the provisions of 28 U.S.C. § 1334. This is a proceeding to terminate and annul the automatic stay and is therefore a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4. Movant is a secured creditor of the Debtor pursuant to a Note executed by Robert Keahon on June 26, 2006, whereby Robert Keahon promised to repay the principal amount of $532,000.00 plus interest to Countrywide Home Loans, Inc. (the "Note"). To secure the repayment of the Note, Robert Keahon and Francine L. Keahon granted Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc. a Mortgage, which was duly recorded in the Rockland County Clerk's Office on July 31, 2006 in Instrument Number 2006-00040511 (the "Mortgage," Note and Mortgage, collectively, as the Loan"), encumbering real property located at 35 Parker Avenue, New City, New York 10956-1722 (the "Property"). The Mortgage was transferred to The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2006-J5, Mortgage Pass-Through Certificates, Series 2006-J5, and said transfer was memorialized by an Assignment of Mortgage executed on September 1, 2011 and recorded September 14, 2011 in Instrument Number 2011-00033462. The terms of the Loan were modified by agreement effective September 1, 2012 entered into by and between the Movant and the Debtor creating a new principal balance in the amount of $592,899.76 (the "Loan Modification Agreement"). Copies of the Note, Mortgage, Loan Modification Agreement, and Assignment of Mortgage are annexed hereto as **Exhibit "A"**.

5. NewRez LLC dba Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this motion for "Movant". In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge,

and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note. The Note is endorsed in blank. Movant is the beneficiary or the assignee of the Deed of Trust.

6. Upon information and belief, the Debtor herein own (s) the Property.

7. Debtor filed a petition for relief under Chapter 7 of the U.S. Bankruptcy Code on or about June 18, 2026.

8. **The Mortgage was in default on the day the Debtor filed this bankruptcy. Based upon said default, Movant initiated foreclosure proceedings in the Supreme Court of the State of New York, County of Rockland, under index number 034318/2013. A Summons and Complaint were filed on August 6, 2013.** Copies of the Summons and Complaint are annexed hereto as **Exhibit "B"**. The filing of the instant bankruptcy stayed said action.

9. Debtor has failed to make current mortgage payments due to Movant under the terms of the Loan. As a result, the Mortgage remains due for the August 1, 2024 payment and each subsequent payment thereafter.

10. The amount of delinquency due as of September 22, 2026 under the Mortgage is as follows:

| | |
|---|---|
| 7 Defaulted Monthly Payments at $4,172.72 each (August 2024 through February 2025) | $29,209.04 |
| 1 Defaulted Monthly Payments at $4,470.86 each (March 2025 through March 2025) | $4,470.86 |
| 2 Defaulted Monthly Payments at $4,116.09 each (April 2025 through May 2025) | $8,232.18 |
| 9 Defaulted Monthly Payments at $4,168.46 each (June 2025 through February 2026) | $37,516.14 |
| 3 Defaulted Monthly Payments at $4,439.92 each (March 2026 through May 2026) | $13,319.76 |
| 4 Defaulted Monthly Payments at $4,523.52 each (June 2026 through September 2026) | $18,094.08 |

| | |
|---|---|
| Recoverable Balance | $8,840.17 |
| Total Delinquencies | $119,682.23 |

11. A copy of the Relief from Stay-Real Estate and Cooperative Apartments ("Affidavit") is annexed hereto as **Exhibit "C"**.

12. Moreover, in view of the total debt due to Movant and in light of the Debtor's failure to make payments, Movant is no longer adequately protected. The automatic stay must be vacated for cause pursuant to 11 U.S.C. § 362(d)(1).

13. As set forth in the Affidavit, as of September 22, 2026, the total unpaid principal balance is $731,316.59, principal balance of $522,316.60 and deferred principal balance of $208,999.99. The approximate debt due and owing to Movant equals $872,852.67. The debt is accruing interest at a rate of 3.00000% per annum. Deferred interest of $17,582.81 is due.

14. Based upon the Debtor's Schedule A/B, the Property has an estimated fair value of approximately $745,000.00. A copy of Debtor's Schedule A/B is annexed hereto as **Exhibit "D"**.

15. As indicated in paragraph 14 herein above, the total debt to Movant equals $872,852.67 As such, there is no dispute that the debt due to the Movant exceeds the value of the Property.

16. By the Debtor's own valuation, the estate has no equity in the Property sought to be foreclosed. Accordingly, relief from the automatic stay is also warranted under 11 U.S.C. § 362(d)(2).

17. Movant, according to the laws of the State of New York and the terms and conditions of the Mortgage, desires to continue and/or commence foreclosure proceedings with respect to the Property.

18. The Debtor, Robert Keahon, Debtor's Attorney, the Chapter 7 Trustee and the Office of the United States Trustee have each been duly served with the within Notice of Motion, Affirmation, Exhibits and proposed Order Vacating Stay, as more fully set forth in the annexed affidavit of mailing.

19. No prior application has been made for the relief requested herein.

20. Robert Keahon executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

SPACE LEFT INTENTIONALLY BLANK

**WHEREFORE,** Movant respectfully requests an Order of this Court vacating the automatic stay for cause pursuant to 11 U.S.C. § 362(d)(1) and (2) as to the aforementioned Property; allowing Movant, its agents, assigns or successors in interest, leave to exercise its rights pursuant to the Note and Mortgage including but not limited to foreclose the Mortgage secured by the subject Property; and for such other, further and different relief as to this Court may seem just, proper and equitable.

Dated: October 9, 2026

/s/ Michael Chatwin

Michael Chatwin
Robert W. Griswold
Shari S. Barak
LOGS Legal Group LLP
Attorneys for NewRez LLC d/b/a Shellpoint Mortgage Servicing as Servicer for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-J5, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-J5
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000
Fax: (585) 247-7380

# CERTIFICATE OF SERVICE

The undersigned certifies that on October 9, 2026, a copy of Notice of Motion, Affirmation in Support, Exhibits and Proposed Order Granting Relief from the Automatic Stay was caused to be deposited in an enclosed, properly addressed post-paid envelope, and served by ordinary U.S. Mail upon the following:

Debtor
Francine Keahon
35 Parker Avenue
New City, NY 10956

Non-filing Co Borrower
Robert Keahon
35 Parker Avenue
New City, New York 10956-1722

Attorney for Debtor
Benjamin Adams
Legal Aid Society of Rockland County Inc.
2 Congers Road
New City, NY 10956

Trustee
Howard P. Magaliff
335 Madison Avenue
9th Floor
New York, NY 10017

United States Trustee
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408

Dated: October 9, 2026

/s/ Michael Chatwin

Michael Chatwin
Robert W. Griswold
Shari S. Barak
LOGS Legal Group LLP
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000
Fax: (585) 247-7380
Email: logsecf@logs.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | |
|---|---|
| IN RE | CHAPTER 7 |
| FRANCINE KEAHON | CASE NO. 26-22625-shl |
| | JUDGE: Sean H. Lane |
| DEBTOR | |

**ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

**UPON** consideration of the Application of NewRez LLC d/b/a Shellpoint Mortgage Servicing as Servicer for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-J5, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-J5, ("Movant") dated October 9, 2026, and it appearing that neither the Debtor , Debtor's Attorney, nor the Chapter 7 Trustee nor the U.S. Trustee have opposition to the motion brought by Movant, for relief from the automatic stay, and with good cause appearing therefore, it is

**ORDERED** that the automatic stay, heretofore in effect pursuant to 11 U.S.C. § 362(a),is hereby vacated for cause pursuant to 11 U.S.C. § 362(d) as to Movant, its agents, assigns or successors in interest , so that Movant, its agents, assigns or successors in interest, may take any and all actions pursuant to the Note and Mortgage and applicable state law including but not limited to foreclose its mortgage on premises known as 35 Parker Avenue, New City, New York 10956-1722 without further application to this Court, and it is further

**ORDERED** that in the event this case is converted to a case under any other chapter of the U.S. Bankruptcy Code, this Order will remain in full force and effect; and it is further

**ORDERED** that the Movant shall promptly report to the Chapter 7 Trustee any surplus monies realized by any sale of the Property.

# EXHIBIT

# A

Prepared by: MELANIE L. WARD

[redacted]

# INTEREST ONLY FIXED RATE NOTE

ORIGINAL

| JUNE 26, 2006 | NEW CITY | NEW YORK |
|---|---|---|
| [Date] | [City] | [State] |

35 PARKER AVENUE, New City, NY 10956-1722
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 532,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is COUNTRYWIDE HOME LOANS, INC. . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month. This payment will be for interest only for the first 120 months, and then will consist of principal and interest.

I will make my monthly payment on the FIRST day of each month beginning on AUGUST 01, 2006 . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on JULY 01, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 660694, Dallas, TX 75266-0694 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 3,325.00 for the first 120 months of this Note, and thereafter will be in the amount of U.S. $ 4,285.76 . The Note Holder will notify me prior to the date of change in monthly payment.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.



[redacted]

[redacted]

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000 % of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

[redacted]

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_______________________________ (Seal)
ROBERT KEAHON -Borrower

_______________________________ (Seal)
-Borrower

_______________________________ (Seal)
-Borrower

_______________________________ (Seal)
-Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC

BY: _______________
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

Paul Piperato County Clerk
1 South Main St Ste 100
New City, NY 10956
(845) 638-5221

[redacted]

# Rockland County Clerk Recording Cover Sheet

**Received From :**
BLACKACRE TITLE AGENCY CORP
399 KNOLLWOOD ROAD SUITE 201
WHITE PLAINS, NY 10603-1900

**Return To :**
COUNTRYWIDE HOME LOANS INC
MS SV-79 DOCUMENT PROCESSING
PO BOX 10423
VAN NUYS, CA 91410-0423

**First GRANTOR**

KEAHON, ROBERT J

**First GRANTEE**

COUNTRYWIDE HOME LOANS INC

[redacted]

**Index Type :** Land Records

**Instr Number :** 2006-00040511

**Book :** **Page :**

**Type of Instrument :** Mortgage
**Type of Transaction :** Mtg Type B

| | |
|---|---|
| **Recording Fee :** | $42.00 |
| **Recording Pages :** | 15 |

The Property affected by this instrument is situated in Clarkstown, in the County of Rockland, New York

**Mortgage Taxes**

| | |
|---|---|
| **Property Located :** | Clarkstown |
| **Serial Number :** | CX5782 |
| **Mortgage Amount :** | $532,000.00 |
| **Basic Tax :** | $2,660.00 |
| **Local Tax :** | $0.00 |
| **Additional Tax :** | $1,566.00 |
| **Transportation Auth Tax :** | $1,330.00 |
| **SONYMA :** | $0.00 |
| **County Tax :** | $1,330.00 |
| **Total :** | $6,886.00 |
| **Total Fees :** | $6,928.00 |

State of New York

County of Rockland

I hereby certify that the within and foregoing was recorded in the Clerk's office for Rockland County, New York

On (Recorded Date) : 07/31/2006

At (Recorded Time) : 5:01:08 PM

[redacted]

Paul Piperato, County Clerk

This sheet constitutes the Clerks endorsement required by Section 319 of Real Property Law of the State of New York

Entered By: MFW Printed On : 08/03/2006 At : 8:35:32AM

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
MELANIE L. WARD

[redacted]

Section # 51.5
Block # 3 County Rkld
Lot# 7 Town/City Clark stown.

[Space Above This Line For Recording Data]

[redacted] [Escrow/Closing #] [redacted] [Doc ID #]

# MORTGAGE

MIN [redacted]

**WORDS USED OFTEN IN THIS DOCUMENT**

**(A) "Security Instrument."** This document, which is dated JUNE 26, 2006 , together with all Riders to this document, will be called the "Security Instrument."

**(B) "Borrower."**

ROBERT J KEAHON + Francine L. Keahon. RJK F.L.K.

whose address is
35 PARKER AVENUE, New City, NY 10956-1722
sometimes will be called "Borrower" and sometimes simply "I" or "me."

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of 4318 Miller Rd., Flint, MI 48501-2026, tel. (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**

**(D) "Lender."**
COUNTRYWIDE HOME LOANS, INC.
will be called "Lender." Lender is a
CORPORATION which exists under the laws of NEW YORK . Lender's address is
4500 Park Granada [redacted], Calabasas, CA 91302-1613 .

**(E) "Note."** The note signed by Borrower and dated JUNE 26, 2006 , will be called the "Note." The Note shows that I owe Lender
FIVE HUNDRED THIRTY TWO THOUSAND and 00/100

Dollars (U.S. $ 532,000.00 ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by JULY 01, 2036 .

Section: 51.5 Block: 3 Lot: 7 Unit: ______



[redacted]

Said premises is or will be improved by a 1 or 2 family dwelling only.

[redacted]

[redacted]

[redacted]

**(F) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."
THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO FAMILY RESIDENCE OR DWELLING ONLY.

**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."
**(I) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."
**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."
**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."
**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."
**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."
**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:
(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;
(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and
(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:
(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and
(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

[redacted]

**DESCRIPTION OF THE PROPERTY**

I give MERS rights in the Property described in (A) through (G) below:
(A) The Property which is located at
35 PARKER AVENUE [Street]
New City [City, Town or Village], New York
10956-1722 [Zip Code]. This Property is in ROCKLAND County.
It has the following legal description:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;
(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either

[redacted]

apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:
First, to pay interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
Such payments will be applied to each Periodic Payment in the order in which it became due.
Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"
(2) The leasehold payments or ground rents on the Property (if any);
(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;
(4) The premium for Mortgage Insurance (if any);
(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and
(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

[redacted]

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or

amount of coverage. Therefore, such coverage will cover Lender, [redacted] me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

[redacted]

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

[redacted]

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

[redacted]

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

[redacted]

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

[redacted]

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

**If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.**

**Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:**

**(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;**

**(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:**

**(1) The promise or agreement that I failed to keep or the default that has occurred;**

**(2) The action that I must take to correct that default;**

[redacted]

**(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;**
**(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;**
**(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and**
**(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and**

**(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.**

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Robert J Keahon (Seal)
ROBERT J. KEAHON -Borrower

Francine L Keahon (Seal)
FRANCINE L. KEAHON -Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

STATE OF NEW YORK, Rockland [redacted] County ss:

On the 26 day of June 2006 before me, the undersigned, a notary public in and for said state, personally appeared

Robert J. Keahon & Francine L. Keahon.

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

[redacted]

SAMANTHA WILLIAMS
NOTARY PUBLIC, State of New York
No. [redacted]
Qualified in Westchester County
Commission Expires Feb 18, 2007

# Blackacre Title Agency Corp.

399 Knollwood Road
White Plains, N.Y. 10603
Tel (914) 993-3344 Fax (914) 993-1433

## SCHEDULE A

## DESCRIPTION

[redacted]

**ALL** that certain plot, piece or parcel of land, situate, lying and being in the Town of Clarkstown, Rockland County, State of New York, and more particularly bounded and described as follows:

**BEGINNING** at the northeasterly corner of premises now or formerly of Pfaff, and on the southerly side of a proposed road as shown on a map entitled "Tentative Subdivision of Property of Adam Reisingor, Clarkstown, Rockland County, N.Y., R.M. Frey, Surveyor" and said point of beginning being approximately 761.10 feet easterly from the easterly side of Red Hill Road, and;

**RUNNING THENCE** along the southerly side of said proposed road, easterly 100 feet to a point;

**THENCE** southerly 150 feet to a point;

**THENCE** westerly 100 feet to the southeasterly corner of lands now or formerly of Pfaff;

**THENCE** in a northerly direction along the line of lands of Pfaff, 150 feet to the southerly side of the proposed road and to the point or place of **BEGINNING.**

FOR INFORMATION ONLY:
Tax Designation:
Rockland County: Town of Clarkstown, Section 51.5 Block 3 Lot 7
Address: 35 Parker Avenue, New City, N.Y.

Paul Piperato, County Clerk
1 South Main St., 100
New City, NY 10956
(845) 638-5070

# Rockland County Clerk Recording Cover Sheet

**Received From :**
CORELOGIC
450 E BOUNDARY ST
CHAPIN, SC 29036

**Return To :**
CORELOGIC
450 E BOUNDARY ST
CHAPIN, SC 29036

**First GRANTOR**

COUNTRYWIDE HOME LOANS INC

**First GRANTEE**

BANK OF NEW YORK MELLON-TR

**Index Type :** Land Records
**Instr Number :** 2011-00033462 **Orig Instr #:** 2006-00040511
**Book :** **Page :**

**Type of Instrument :** Assignment Of Mortgage
**Type of Transaction :** A/Mtg,R/Mtg
**Recording Fee :** $50.50

**Recording Pages :** 2

**Recorded information**

State of New York

County of Rockland

I hereby certify that the within and foregoing was recorded in the Clerk's office for Rockland County, New York

On (Recorded Date) : 09/14/2011

At (Recorded Time) : 3:11:00 PM

[redacted]

Paul Piperato, County Clerk

[redacted]

This sheet constitutes the Clerks endorsement required by Section 319 of Real Property Law of the State of New York

Entered By: RCD Printed On : 09/21/2011 At : 10:27:20AM

Recording Requested By:
**Bank of America**
Prepared By: **Kathy Oriard**
**888-603-9011**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
[redacted]

Property Address:
**35 Parker Ave**
**New City, NY 10956-1722**
Property Location:
[redacted]

[redacted]

This space for Recorder's use

MIN #: [redacted] MERS Phone #: 888-679-6377

# ASSIGNMENT OF MORTGAGE

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.**, the undersigned holder of the Mortgage described below (herein "Assignor") whose address is **3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474** does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-J5, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-J5** whose address is **101 BARCLAY ST - 4W, NEW YORK ,NY 10286** all beneficial interest under that certain security instrument described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said security instrument.

| | |
|---|---|
| Original Lender: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.** |
| Made By: | **ROBERT J KEAHON & FRANCINE L. KEAHON** |
| Date of Mortgage: | **6/26/2006** |
| Original Loan Amount: | **$532,000.00** |

Section: **51.5** Lot: **7** Block: **3**

Recorded in **Rockland County**, **NY** on: **7/31/2006**, book **N/A**, page **N/A** and instrument number **2006-00040511**

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated:
9-1-2011

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.**

By: ______________________
**Barbara Nord,As sistant Secretary**

State of **California**
County of **Ventura**

On Sep. 1, 2011 before me, ROUDABEH BEYGZADEH- ELIAS, NOTARY PUBLIC, Notary Public, personally appeared **Barbara Nord**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: ______________________ (Seal)
My Commission Expires: June 4, 2015

ROUDABEH BEYGZADEH-ELIAS
Commission # [redacted]
Notary Public - California
Los Angeles County
My Comm. Expires Jun 4, 2015

**This document was prepared by**
Home Retention Services, Inc.,
Modifications Department
9700 Bissonnet Street
Suite 1500
Houston, TX 77036
1.877.422.1761

[Space Above This Line For Recording Data]

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I")[1]: ROBERT KEAHON

Original Lender/Beneficiary Lender or Servicer ("Lender"): Bank of America, N.A.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): June 26, 2006
Loan Number: [redacted]
*Property Address (See Exhibit A for Legal Description if applicable) "Property":*
35 PARKER AVENUE, NEW CITY, NY 10956
*See Exhibit B for assignments of record if applicable*

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.



[redacted] [redacted]

supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

   G. I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:



[redacted] [redacted]

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on September 01, 2012 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on September 01, 2012.

A. The Maturity Date will be: July 01, 2036.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $592,899.76 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. $110,456.17 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $482,443.59. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of August 01, 2012 and the first new monthly payment on the Interest Bearing Principal Balance will be due on September 01, 2012. My payment schedule for the modified Loan is as follows:



[redacted] [redacted]

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| Years 1-5 | 2.000% | 08/01/2012 | $1,460.96 | $1,240.80 May adjust periodically | $2,701.76 May adjust periodically | 09/01/2012 | 60 |
| Year 6 | 3.000% | 08/01/2017 | $1,697.30 | May adjust periodically | May adjust periodically | 09/01/2017 | 12 |
| Years 7-24 | 3.500% | 08/01/2018 | $1,819.81 | May adjust periodically | May adjust periodically | 09/01/2018 | 215 |

* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

I understand that my monthly principal and interest payment for the New Principal Balance reflects amortization of principal over 40 years from the date of my first modification payment. The scheduled maturity date of my loan will remain unchanged. If I make all of the scheduled payments under the modification on time, a principal remaining balance of $268,284.50 will remain unpaid on the scheduled maturity date. This balance will accrue interest at the Note rate and is called a balloon payment. I will need to make arrangements to pay this remaining balance when I pay off my loan or transfer an interest in or refinance or sell my home. This balloon payment may decrease if I am eligible for earned forgiveness.



[redacted] [redacted]

The total remaining principal balance that will be due in a balloon payment at the maturity of my loan, will be the total of both my Deferred Principal Balance and the balloon payment resulting from the extended amortization of my loan, which will be $378,740.67.

THE TERM OF THE LOAN IS 23 YEARS AND 11 MONTHS. AS A RESULT, YOU WILL BE REQUIRED TO REPAY THE ENTIRE PRINCIPAL BALANCE AND ANY ACCRUED INTEREST THEN OWING 23 YEARS AND 11 MONTHS FROM THE DATE ON WHICH THE LOAN IS MADE.

THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR YOU MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

ASSUMING THIS LENDER OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

THE AMOUNT OF THE FINAL PAYMENT ON THIS LOAN, ASSUMING ALL SCHEDULED PRINCIPAL PAYMENTS ARE MADE IN ACCORDANCE WITH THIS MODIFICATION AGREEMENT, IS $378,740.67.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the



[redacted] [redacted]

borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such



[redacted] [redacted]

revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the



[redacted] [redacted]

obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. I also agree to allow Lender to attach an Exhibit A to this loan modification which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

K. That I will execute such other documents as may be reasonably necessary to either (i)



[redacted]

[redacted]

consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

M. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4. M shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N. If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

O. BORROWERS PROTECTION PLAN If I have a Loan with Borrowers Protection Plan® ("BPP") under my Loan Documents, then I understand and agree that, unless I notify Lender of my request to cancel BPP or my BPP has already been cancelled or terminated in accordance with its terms, my BPP will remain on my Loan, as modified in accordance with this Agreement, and will continue to be governed by the terms of my Borrowers Protection Plan Addendum, which is the contract containing the terms and conditions of BPP that I received at the closing of my original Loan.

I understand that I may cancel BPP at any time by calling 1-866-554-2676. If I notify the Lender of my request to cancel BPP within sixty (60) days after the Modification Effective Date, I will receive a refund of any BPP fees I pay with respect to any period after the Modification Effective Date. I further understand that BPP on my Loan may have already been cancelled or terminated by its terms, such as if any monthly fee for BPP has remained unpaid 90 days after its due date.

For purposes of my modified Loan, the "Monthly Payment" under the Borrowers Protection Plan Addendum will be the monthly payment of principal and/or interest as modified under this Agreement. With the exception of BPP benefits based on the outstanding balance of my Loan (if any), benefits under the BPP on my modified Loan will be calculated based on this new Monthly Payment amount, subject to the terms of the Borrowers Protection Plan Addendum.

For purposes of my modified Loan, the monthly fee for BPP, which is the monthly amount charged to me for BPP, will be recalculated based on the percentage set forth in my Borrowers Protection Plan Addendum (or Borrowers Protection Plan Confirmation Letter, as applicable). I understand that the monthly fee for BPP, as a percentage of my monthly payment of principal and/or interest as modified under this Agreement, may be higher if the monthly payment under my modified Loan is or becomes higher than the monthly payment that was due on my Loan prior to modification under this Agreement. The monthly fee for BPP will be payable at the same time and place as payments of principal and/or interest under my modified Loan. The "Protection Date" under the Borrowers Protection Plan Addendum, which is the date upon which my BPP became effective, and the "Expiration Date" under the Borrowers Protection Plan Addendum, which is the date upon which my BPP will automatically expire, will not be changed by this Agreement. I will refer to my Borrowers Protection Plan Addendum for complete terms and conditions of my BPP.

If I have experienced a qualifying event that is eligible for benefits under BPP, I should contact Bank of America immediately by calling 1-866-317-5116.



[redacted] [redacted]

P. OPTIONAL PRODUCTS PURCHASED AFTER CLOSING I understand and agree that any optional product(s) I may have purchased after the closing of my Loan, the cost for which I agreed to have added to my Total Monthly Payment: (a) will remain in force so long as I add the amount due and owing to my Total Monthly Payment each month; and (b) will continue to be governed by the terms of the documents the provider of the optional product delivered to me ("Governing Documents"), unless (i) I notify the provider of the optional product of my request to cancel; or (ii) I fail to pay any and all amounts payable when due, at which time the optional product may terminate as provided under the terms of the Governing Documents. I understand that if I have questions regarding any optional product(s) I may have purchased, I should contact Bank of America by calling 800-641-5298.

In Witness Whereof, the Lender and I have executed this Agreement.

Robert Keahon (Seal) — 8/16/12

Borrower ROBERT KEAHON — Date

____________________ (Seal) — ____________________

Borrower — Date

[Space Below This Line For Acknowledgement]



[redacted] [redacted]

**DO NOT WRITE BELOW THIS LINE**

THIS SECTION IS FOR INTERNAL USE ONLY

**Bank of America, N.A.,**
By: Stewart Lender Services, Inc., its attorney in fact

By: ______________________________ ____________________
Date

______________________________, Stewart Lender Services, Inc.

STATE OF TEXAS
COUNTY OF HARRIS

This instrument was acknowledged before me on ______________________________ by, ______________________________ of Stewart Lender Services, Inc., a Texas corporation, on behalf of said corporation.

Notary Public

______________________________

My commission expires: ____________________



[redacted] [redacted]

State of NEW YORK )
)SS:
County of: Rockland )

On the 10 day of Aug in the year 2012 before me, the undersigned, a Notary Public in and for said State, personally appeared ROBERT KEAHON personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

My commission expires: 4/21/15

CORINNE WOLPER
Notary Public, State of New York
No. 01WO6091039
Qualified in Rockland County
Commission Expires April 21, 20 15

[redacted]

DO NOT WRITE BELOW THIS LINE

---

THIS SECTION IS FOR INTERNAL USE ONLY

**Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP**

By: Stewart Lender Services, Inc., its attorney in fact

By: Casey Human 6/25/13

Casey Human, A.V.P., Stewart Lender Services, Inc. Date

Signatures continue on the following page

DO NOT WRITE BELOW THIS LINE

THIS SECTION IS FOR INTERNAL USE ONLY

**Mortgage Electronic Registration Systems, Inc. (MERS), as Nominee for Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP**

By: Casey Human  6/25/13

Casey Human, Vice President  Date

# EXHIBIT

# B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-J5, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-J5,

Plaintiff(s),

-against-

ROBERT KEAHON, FRANCINE L KEAHON, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, ALL POINTS CAPITAL CORP, M SPIEGEL AND SONS OIL CORP d/b/a SOS FUELS, MELISSA THORNE, AMERICAN EXPRESS BANK, FSB,

"JOHN DOE #1" through "JOHN DOE #12," the last twelve names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises, described in the complaint,

Defendant(s).

INDEX NO.:
Date Filed:

SUMMONS

Plaintiff designates ROCKLAND County as the place of trial

Premises:
35 PARKER AVENUE , NEW CITY, NY 10956

Venue is based upon County in which the premises are situated

To the above named Defendant(s):

NOTICE

YOU ARE IN DANGER OF LOSING YOUR HOME

If you do not respond to this summons and complaint by serving a copy of the answer on the attorneys for the mortgage company who filed this foreclosure proceeding against you and filing the answer with the court, a default judgment may be entered and you can lose your home.

Speak to an attorney or go to the court where your case is pending for further information on how to answer the summons and protect your property.

Sending a payment to your mortgage company will not stop this foreclosure action.

YOU MUST RESPOND BY SERVING A COPY OF THE ANSWER ON THE ATTORNEY FOR THE PLAINTIFF (MORTGAGE COMPANY) AND FILING THE ANSWER WITH THE COURT.

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's Attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: Armonk, New York
August 2, 2013

LEOPOLD & ASSOCIATES, PLLC

BY: Benjamin Casolaro
Attorneys for Plaintiff
80 Business Park Drive
Suite 110
Armonk, NY 10504
914-219-5787

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

- - - - - - - - - - - - - - - - - - - - - - - - - x

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-J5, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-J5,

INDEX NO.:
Date Filed:

Plaintiff(s),

-against-

COMPLAINT FOR FORECLOSURE OF A MORTGAGE

ROBERT KEAHON, FRANCINE L KEAHON, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, ALL POINTS CAPITAL CORP, M SPIEGEL AND SONS OIL CORP d/b/a SOS FUELS, MELISSA THORNE, AMERICAN EXPRESS BANK, FSB,

"JOHN DOE #1" through "JOHN DOE #12," the last twelve names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises, described in the complaint,

Defendant(s).

- - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff(s) by its/their attorneys Leopold & Associates, PLLC, hereby allege(s) upon information and belief:

1. On or about June 26, 2006, defendant(s) ROBERT KEAHON borrowed the sum of $532,000.00 from COUNTRYWIDE HOME LOANS, INC. , by a certain note dated the same date, whereunder said loan was repayable as follows: the amount of $3,325.00 beginning August 1, 2006, and a like sum of exact amount each and every month until August 1, 2016,

when the amount due each and every month increased to $4,265.76, and would be due until the maturity date of July 1, 2036. Said monthly payments are to be applied to the interest on the note for the first 120 months at the rate calculated in accordance with the provisions of the note, and subsequent monthly payments are to be applied in reduction of principal. Interest shall continue at the above rate or the default rate, if applicable, pending satisfaction of the above indebtedness.

2. Said note provided, among other things, that in the event of default by the maker(s) of the note, ROBERT KEAHON, in the payment of any of the above described payments, the entire balance hereunder shall be immediately due and payable.

3. In order to collaterally secure the aforesaid obligation, defendant(s) ROBERT KEAHON and FRANCINE L KEAHON, on the same day, duly executed, acknowledged and delivered to the plaintiff or plaintiff's assignor a mortgage, whereby said defendant(s) mortgaged the following real property with the appurtenances thereto, described in the mortgage as follows: See Schedule A - "Legal Description" annexed hereto and made a part hereof. Said premises being known as and by 35 PARKER AVENUE, NEW CITY, NY 10956. TOGETHER with all right, title and interest of the defendant(s) in and to the land lying in the streets and roads in front of and adjoining said premises.

4. Said mortgage provided for the following:

a) In case of foreclosure sale said premises or so much thereof as may be affected by this mortgage, may be sold in one parcel.

b) That the mortgagor will pay all taxes, assessments, sewer rents or water rates and in default thereof, the mortgagee may pay the same.

c) In any lawsuit for foreclosure and sale lender will have the right to collect all costs and disbursements and additional allowances allowed by applicable law and will have the right to add all reasonable attorneys` fees to the amount borrower owes lender which fees shall become part of the Sums Secured.

d) That the whole of said principal sum and interest shall become due at the option of the mortgagee after default in the payment of any installment of principal or of interest.

5. That the said mortgage was duly recorded in Document 2006-40511 in the Office of the CLERK of the County of ROCKLAND on July 31, 2006, and the New York State recording tax was duly paid thereon. The aforementioned note and mortgage were thereafter modified.

6. The subject mortgage was ultimately assigned by written agreement therefore to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-J5, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-J5 by assignment of mortgage executed on September 1, 2011.

7. Plaintiff is in possession of the original note with a proper endorsement and/or allonge and is therefore, the holder of both the note and mortgage, which passes as incident to the note.

8. Defendant(s) ROBERT KEAHON own(s) the equity of redemption herein foreclosed and is/are joined as necessary party defendant(s) to foreclose all right, title, interest and equity of redemption in the mortgaged premises, and will be liable for any deficiency judgment as may be directed by this Court, unless said defendants have received a discharge from the United States Bankruptcy Court.

9. Plaintiff verily believes that during the pendency of this action, in order to protect the security of the within mortgage, it may be compelled to make advances to prior mortgagees, if any, for installments of principal and interest, taxes, assessments, water rates, and/or fire insurance premiums that are or may become due under said prior mortgage or to the receiver of taxes, or to the fire insurance company, which advances are to be included in the balance due to plaintiff, plus interest, as provided for in the within mortgage foreclosed and deemed further secured thereby.

10. ROBERT KEAHON has defaulted under the note for $532,000.00 owing to plaintiff and no payment thereof has been made to plaintiff from said ROBERT KEAHON despite demand, by having failed to make monthly payments on March 1, 2013 to date. By virtue thereof, plaintiff has heretofore elected and by these presents hereby elects to accelerate the entire unpaid principal balance of $588,941.97 to be immediately due and payable under the modified mortgage herein

foreclosed, plus interest at the rate calculated in accordance with the provisions of the note from February 1, 2013, together with all applicable unpaid late charges that have accrued prior to this action as of June 13, 2013. Presently there is no partial payment held in suspense. Plaintiff is also entitled to recover escrow advances made to protect plaintiff's mortgage and a reasonable amount for attorneys' fees to be determined by the Court.

11. Plaintiff is the holder of the note and mortgage sought to be foreclosed herein.

12. That no other action is currently pending for the recovery of said sum secured by said note and mortgage.

13. That each and all of the defendants herein have or claim to have some interest in, or lien upon the said mortgaged premises or some part thereof, which interest or lien, if any, has accrued subsequently to the lien of the said mortgage, and is subject and subordinate thereto.

14. That any municipal agency named as a defendant herein is named solely for the purpose of providing notice to said agency and extinguishing any interest held by said agency by virtue of a lien of the said agency, copies of any such lien(s) are annexed hereto as Exhibit "A".

15. That plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made by reason of any payment after the date of commencement of this action.

16. If applicable, the Plaintiff has complied with all of the provisions of section five hundred ninety-five-a of the Banking Law and any rules and regulations promulgated thereunder, section six-l or six-m of the Banking Law, and sections thirteen hundred and four and thirteen hundred and six of the RPAPL.

17. That (i) foreclosing party or creditor ("Noteholder"), directly or through an agent, has possession of the promissory note. The promissory note is either made payable to the Foreclosing Party or has been duly indorsed; (ii) the mortgage complies with the underwriting standards in Banking Law Section 6-m, as well as the pre-foreclosure notice requirements; and (iii) the plaintiff has complied with the requirements of RPAPL 1304 and 1306 regarding the sending and filing of pre-foreclosure information with the Banking Department.

WHEREFORE, the plaintiff demands judgment that the defendant(s) herein and all persons claiming under them or any or either of them subsequent to the commencement of this action may be forever barred and foreclosed of all right, claim, lien and equity of redemption in the said mortgaged premises; that the said premises may be decreed to be sold according to law in "as is" physical order and condition, subject to any covenants, easements, restrictions and reservations of record; any violations of record; any state of facts an accurate survey may show; any zoning regulations or amendments thereto; rights of tenants or persons in possession of the subject premises; any prior mortgage liens of record; any prior lien of record; and any advances or arrears thereunder; any equity of

redemption of the UNITED STATES OF AMERICA to redeem the premises within 120 days from date of sale; that this Court forthwith appoint a receiver of the rents and profits of said premises, during the pendency of this action with the usual powers and duties; that monies arising from the sale may be brought into court; that plaintiff may be paid the amount due on said note and mortgage with interest to the time of such payment, attorney's fees, as set forth in the mortgage, the costs of this action and the expenses of said sale so far as the amount of such monies properly applicable thereto will pay the same; and that defendant(s) ROBERT KEAHON may be adjudged to pay the whole residue, or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after the sale of the mortgaged premises and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be determined by the Court as provided in Section 1371 of the Real Property Actions and Proceedings Law.

Dated: Armonk, New York
August 2, 2013

LEOPOLD & ASSOCIATES, PLLC

BY: Benjamin Casolaro
Attorneys for Plaintiff
80 Business Park Drive
Suite 110
Armonk, NY 10504
914-219-5787

## SCHEDULE A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Clarkstown, County of Rockland and State of New York, and more particularly bounded and described as follows:

BEGINNING at a point on the southerly side of Parker Avenue, said point being marked by an iron pipe, said point being the northwesterly corner of the premises, being the northeasterly corner of lands now or formerly of McGowan (Tax Lot 19-A-25) and said point being distant easterly (as measured along the southerly side of Parker Avenue) 753.47 feet from the corner formed by the intersection of the easterly side of Red Hill Road with the southerly side of Parker Avenue and running thence;

1. South 75° 28' 10" East along the southerly side of Parker Avenue 100.00 feet to an iron pipe marking the northeasterly corner of the premises and the northwesterly corner of lands now or formerly of Stala (Tax Lot 19-A-27), thence;

2. South 14° 31' 48" West along the easterly line of the premises and the westerly line of said lands now or formerly of Stala (Tax Lot 19-A-27) the distance of 150.00 feet to a point in a stone wall in the northerly line of lands now or formerly of Kaplan (Tax Lot 19-A-18.11), being the southeasterly corner of the premises and the southwesterly corner of said lands now or formerly of Stala, thence;

3. North 75° 28' 10" West along the southerly line of the premises, passing through the aforesaid stone wall and along the northerly line of lands now or formerly of Kaplan and Rimland, respectively (Tax Lots 19-A-18.11 and 18.10, respectively) the distance of 100.00 feet ot an iron pipe marking the southwesterly corner of the premises and the southeasterly corner of lands now or formerly of McGowan (Tax Lot 19-A-25), thence;

4. North 14° 31' 50" East along the westerly line of the premises and the easterly line of said lands now or formerly of McGowan (Tax Lot 19-A-25) the distance of 150.00 feet to an iron pipe on the southerly side of Parker Avenue, being the northwesterly corner of the premises, the northeasterly corner of said lands now or formerly of McGowan and the point or place of BEGINNING.

# EXHIBIT A

New York State Department of
Taxation And Finance
1-800-835-3554

# Certification Of Tax Warrant

**Commissioner of Taxation and Finance** — Judgment Creditor

against

ROBERT J KEAHON
FRANCINE KEAHON — Judgment Debtor

35 PARKER AVE
NEW CITY, NY 10956-1722 — Last Known Address

Warrant ID: [redacted]

The people of the state of New York to:
the New York State Commissioner of Taxation and Finance: Whereas, a tax has been found due to the Commissioner of Taxation and Finance of the state of New York imposed by the New York StateTax Law from the debtor named, the nature and amount of which, together with the interest and penalties thereon, are as follows:

Amount: $7,575.87

And whereas, said tax, interest and penalties now remain wholly unpaid;

Now therefore, we command you, that you satisfy said claim of said Commissioner of Taxation and Finance for said tax with penalties and interest out of the real and personal property in said county belonging to said debtor and the debts due to him at the time when said copy of this warrant is so docketed in the office of the clerk of such county or at any time thereafter; and that only the property in which said debtor who is not deceased has an interest or the debts owed to him shall be levied upon or sold hereunder; and return this warrant and pay the money collected, to the Commissioner of Taxation and Finance of the state of New York.

Levy and collect total amount due shown above plus accrued interest and any additional penalties provided by law

Current Interest Rate 9.00% per year on $7,575.87 from perfected date 05/09/2011
The interest rate may vary according to the Tax Law.

Warrant docketed in Rockland County Clerk's Office on 05/09/2011

---

STATE OF NEW YORK

COUNTY OF ROCKLAND CLERK'S OFFICE

I, Paul Piperato Clerk of the said County, and also Clerk of the Supreme and County Courts, being Courts of Record held therein, DO HEREBY CERTIFY that I have compared the above information with the records filed in this office on the above date and that the same is a correct transcript of

IN TESTIMONY WHEREOF, I have hereunto set my name and affixed my official seal

this ......................day of ......................................

..........................................................................Clerk

**New York State Department of Taxation and Finance**

# Warrant

CCED - Child Support Enforcement Section
PO Box 5350
Albany NY 12205-0350

**Commissioner of Taxation and Finance** Judgment Creditor

against

ROBERT J KEAHON
1153 WOODWINDS DR
WAXHAW, NC 28173-7887

Judgment Debtor

Last Known Address

**Warrant ID:**
[redacted]

**County of Judgment:**
Rockland

**The people of the state of New York to:**
the New York State Commissioner of Taxation and Finance: **Whereas**, a tax has been found due to the Commissioner of Taxation and Finance of the state of New York imposed by the New York StateTax Law from the debtor named, the nature and amount of which, together with the interest and penalties thereon, are as follows:

**Total amount Due: $19,146.96**

By statute, subsequent support arrears due on the above referenced notification are deemed part of this judgment. Accordingly, all sums collected will be applied to such subsequent arrears and the balance of this judgment. However, if at any time the amount collected equals the stated judgment amount, this judgment shall be regarded as satisfied.

**And whereas**, said obligation now remains wholly unpaid;

**Now therefore, we command you** to file a copy of this warrant, within five days after its receipt by you, with the office of the clerk of the county named above, for entry by him/her in the judgment docket, pursuant to the provisions of the Tax Law.

**And we further command you**, to satisfy said claim of said **Commissioner of Taxation and Finance** for said obligation out of the real personal property in said county belonging to said debtor and the debts due to him/her at the time when said copy of this warrant is so docketed with the office of the clerk of such county or at any time thereafter; and that only the property in which said debtor who is not deceased has an interest or the debts owed to him/her shall be levied upon or sold hereunder; and return this warrant and pay the money collected to the Commissioner of Taxation and Finance of the State of New York.

**Levy and collect** total amount due shown above.

**Warrant** received on May 17, 2013

# Help for Homeowners in Foreclosure

New York State Law requires that we send you this notice about the foreclosure process. Please read it carefully.

**Summons and Complaint**

**You are in danger of losing your home. If you fail to respond to the summons and complaint in this foreclosure action, you may lose your home.**

Please read the summons and complaint carefully. You should immediately contact an attorney or your local legal aid office to obtain advice on how to protect yourself.

**Sources of Information and Assistance**

**The State encourages you to become informed about your options in foreclosure. In addition to seeking assistance from an attorney or legal aid office, there are government agencies and non-profit organizations that you may contact for information about possible options, including trying to work with your lender during this process.**

**To locate an entity near you, you may call the toll-free helpline maintained by the New York State Banking Department at 1-877-BANK-NYS or visit the Department's website at WWW.BANKING.STATE.NY.US.**

**Foreclosure rescue scams**

**Be careful of people who approach you with offers to "save" your home. There are individuals who watch for notices of foreclosure actions in order to unfairly profit from a homeowner's distress. You should be extremely careful about any such promises and any suggestions that you pay them a fee or sign over your deed. State law requires anyone offering such services for profit to enter into a contract which fully describes the services they will perform and fees they will charge, and which prohibits them from taking any money from you until they have completed all such promised services.**

**SUPREME COURT**
**STATE OF NEW YORK, COUNTY OF ROCKLAND** **INDEX NO.:**

**THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-J5, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-J5,**

**Plaintiff(s),**

**-against-**

**ROBERT KEAHON, FRANCINE L KEAHON, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, ALL POINTS CAPITAL CORP, M SPIEGEL AND SONS OIL CORP d/b/a SOS FUELS, MELISSA THORNE, AMERICAN EXPRESS BANK, FSB,**

**Defendant(s).**

# FORECLOSURE OF MORTGAGE SUMMONS & COMPLAINT

**LEOPOLD & ASSOCIATES, PLLC**

**Attorneys for Plaintiff(s)**

*Office and Post Office Address, Telephone*
**80 Business Park Drive, Suite 110**
**Armonk, NY 10504**
**914-219-5787**

Regency Process Service, LLC
761 Koehler Avenue
Suite A
Ronkonkoma, NY 11779
Telephone: 631-981-5378
Fax: 631-981-4842

Signature (Rule 130-1.1-a)

Print name beneath
BENJAMIN CASOLARO, ESQ.

Service of a copy of the within is hereby admitted
Dated: ______________________

# EXHIBIT

# C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

IN RE

FRANCINE KEAHON

DEBTOR

CHAPTER 7

CASE NO. 26-22625-shl

JUDGE: Sean H. Lane

RELIEF FROM STAY – REAL ESTATE AND
COOPERATIVE APARTMENTS

I, Kateryna Halfwassen, Bankruptcy Case Manager II <NAME AND TITLE> OF NewRez LLC d/b/a Shellpoint Mortgage Servicing as Servicer for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-J5, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-J5 (HEREINAFTER, "MOVANT"), HEREBY DECLARE (OR CERTIFY, VERIFY. OR STATE):

**BACKGROUND INFORMATION**

1. REAL PROPERTY OR COOPERATIVE APARTMENT ADDRESS WHICH IS THE SUBJECT OF THIS MOTION: 35 Parker Avenue, New City, New York 10956-1722

2. LENDER NAME: THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-J5, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-J5

3. DATE OF MORTGAGE: June 26, 2006

4. POST-PETITION PAYMENT ADDRESS: NewRez LLC d/b/a Shellpoint Mortgage Servicing, P.O. Box 650840, Dallas, Texas, 75265-0840

## DEBT/VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AT THE TIME OF FILING THE MOTION: $872,852.67 (as of September 22, 2026)
(Note: this amount may not to be relied on as a "payoff" quotation.)

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT: $745,000.00

7. SOURCE OF ESTIMATED VALUATION:

Debtor Schedule A/B

## STATUS OF DEBT AS OF (SEPTEMBER 22, 2026)

8. TOTAL PRE-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF PETITION FILING DATE:

$872,852.67

A. AMOUNT OF PRINCIPAL: $522,316.60

B. DEFERRED PRINCIPAL: $208,999.99

C. AMOUNT OF INTEREST: $46,351.61

D. DEFERRED INTEREST: $17,582.81

E. AMOUNT OF ESCROW (TAXES AND INSURANCE): $68,761.49

F. AMOUNT OF FORCED PLACED INSURANCE EXPENDED BY MOVANT: $0.00

G. AMOUNT OF ATTORNEYS' FEES BILLED TO DEBTOR(S) PRE-PETITION: $0.00

H. AMOUNT OF LATE FEES, IF ANY, BILLED TO DEBTOR(S): $0.00

9. CONTRACTUAL INTEREST RATE: 3.00000%

(If interest rate is (or was) adjustable, please list the rate(s) and date(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: see attached exhibit e)

10. PLEASE EXPLAIN ANY ADDITIONAL FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR'S/DEBTORS' ACCOUNT AND NOT LISTED ABOVE:

Recoverable Balance: $8,840.17

(If additional space is needed, please list the amounts on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: N/A.)

**AMOUNT OF ALLEGED DEFAULTED**
**(AS OF 09/22/2026)**

11. DATE LAST PAYMENT WAS RECEIVED: N/A

12. ALLEGED TOTAL NUMBER OF CONTRACTUAL PAYMENTS DUE: 26 payments.

13. PLEASE LIST ALL CONTRACTUAL PAYMENTS ALLEGED TO BE IN DEFAULT:

| ALLEGED PAYMENT DUE DATE | ALLEGED AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED (IF ANY) |
|---|---|---|---|---|---|---|
| 8/1/24-2/1/25 | $4,172.72 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 3/1/25-3/1/25 | $4,470.86 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 4/1/25-5/1/25 | $4,116.09 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 6/1/25-2/1/26 | $4,168.46 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 3/1/26-5/1/26 | $4,439.92 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 6/1/26-9/1/26 | $4,523.52 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| TOTALS | $110,842.06 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

14. AMOUNT OF MOVANT'S ATTORNEYS' FEES BILLED TO DEBTOR FOR THE PREPARATION, FILING AND PROSECUTION OF THIS MOTION: $0.00

15. AMOUNT OF MOVANT'S FILING FEE FOR THIS MOTION: $0.00

16. OTHER ATTORNEYS' FEES BILLED TO DEBTOR POST-PETITION: $0.00

17. AMOUNT OF MOVANT'S POST-PETITION- INSPECTION FEES: $0.00

18. AMOUNT OF MOVANT'S POST-PETITION APPRAISAL/BROKER'S PRICE OPINION: $0.00

19. AMOUNT OF FORCED PLACED INSURANCE OR INSURANCE PROVIDED BY THE MOVANT POST-PETITION: $0.00

20. SUM HELD IN SUSPENSE BY MOVANT IN CONNECTION WITH THIS CONTRACT, IF APPLICABLE: ($0.00)

21. AMOUNT OF OTHER POST-PETITION ADVANCES OR CHARGES, FOR EXAMPLE TAXES, INSURANCE INCURRED BY DEBTOR, ETC.: N/A

## REQUIRED ATTACHMENTS TO MOTION

Please attach the following documents to this motion and indicate the exhibit number associated with the documents.

(1) Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibit A.)

(2) Copies of documents establishing proof of standing to bring this Motion. (Exhibit A.)

(3) Copies of documents establishing that Movant's interest in the real property or cooperative apartment was perfected. For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property or cooperative apartment is located in. (Exhibit N/A)

## CERTIFICATION FOR BUSINESS RECORDS

I CERTIFY THAT THE INFORMATION PROVIDED IN THIS FORM AND/OR ANY EXHIBITS ATTACHED TO THIS FORM (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, IMMEDIATELY ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS, WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND WERE MADE BY THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER CERTIFY THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, IMMEDIATELY ABOVE, ARE TRUE AND ACCURATE COPIES OF THE ORIGINAL DOCUMENTS. I FURTHER CERTIFY THAT THE ORIGINAL DOCUMENTS ARE IN MOVANT'S POSSESSION, EXCEPT AS FOLLOWS:

______________________________________________

## DECLARATION

I, Kateryna Halfwassen, Bankruptcy Case Manager II
<NAME AND TITLE> OF NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING AS SERVICER FOR THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-J5, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-J5 HEREBY DECLARE (OR CERTIFY, VERIFY, OR STATE) PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT Tempe, Arizona ON THIS 7th DAY OF October, 2026.

______________________________
Print Name

Kateryna Halfwassen, Bankruptcy Case Manager II
Title

NEWREZ LLC D/B/A SHELLPOINT
MORTGAGE SERVICING AS SERVICER
FOR THE BANK OF NEW YORK
MELLON FKA THE BANK OF NEW
YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWALT,
INC., ALTERNATIVE LOAN TRUST
2006-J5, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-J5
P.O. Box 650840
Dallas, Texas, 75265-0840

# EXHIBIT

# D

**Fill in this information to identify your case and this filing:**

Debtor 1: Francine Keahon
First Name / Middle Name / Last Name

Debtor 2 (Spouse, if filing):
First Name / Middle Name / Last Name

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK

Case number 26-22625

☒ Check if this is an amended filing

# Official Form 106A/B
# Schedule A/B: Property

**12/15**

**In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

## Part 1: Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.
☒ Yes. Where is the property?

1.1
35 Parker Avenue
Street address, if available, or other description

New City NY 10956
City State ZIP Code

Rockland
County

**What is the property?** Check all that apply
- ☒ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☐ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other

**Who has an interest in the property?** Check one
- ☒ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| **Current value of the entire property?** | **Current value of the portion you own?** |
|---|---|
| $745,000.00 | $745,000.00 |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**
Fee simple

☐ **Check if this is community property** (see instructions)

**Other information you wish to add about this item, such as local property identification number:**

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.......=>** $745,000.00

## Part 2: Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☒ No
☐ Yes


Software Copyright (c) 1996-2026 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

Debtor 1 Francine Keahon Case number *(if known)* 26-22625

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☒ No
☐ Yes

5 **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.....=>** $0.00

**Part 3: Describe Your Personal and Household Items**

**Do you own or have any legal or equitable interest in any of the following items?** — **Current value of the portion you own?** Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
☒ Yes. Describe.....
Armoire, dresser, two nightstands, lamps, coffee table, side table, cabinets, table used as office desk. — $500.00

7. **Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
☐ No
☒ Yes. Describe.....
Computer, phone, two TVs. — $750.00

8. **Collectibles of value**
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
☒ No
☐ Yes. Describe.....

9. **Equipment for sports and hobbies**
*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
☒ No
☐ Yes. Describe.....

10. **Firearms**
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
☒ No
☐ Yes. Describe.....

11. **Clothes**
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
☐ No
☒ Yes. Describe.....
Various pieces of clothing. — $500.00

12. **Jewelry**
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
☐ No
☒ Yes. Describe.....
Watch and jewelry. — $250.00

13. **Non-farm animals**
*Examples:* Dogs, cats, birds, horses
☐ No
☒ Yes. Describe.....
Two Pet dogs — $0.00


Software Copyright (c) 1996-2026 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

Debtor 1 Francine Keahon Case number *(if known)* 26-22625

**14. Any other personal and household items you did not already list, including any health aids you did not list**
☒ No
☐ Yes. Give specific information.....

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** .............................................................................. $2,000.00

**Part 4: Describe Your Financial Assets**

**Do you own or have any legal or equitable interest in any of the following?**

**Current value of the portion you own?** Do not deduct secured claims or exemptions.

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
☐ No
☒ Yes.........................................................................................................................

Cash $20.00

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
☐ No
☒ Yes........................ Institution name:

17.1. Checking — Webster Bank Checking Account # Ending in *4903 — $3,254.32

**18. Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
☒ No
☐ Yes.................. Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
☒ No
☐ Yes. Give specific information about them...................
Name of entity: % of ownership:

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
☒ No
☐ Yes. Give specific information about them
Issuer name:

**21. Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
☒ No
☐ Yes. List each account separately.
Type of account: Institution name:

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
☒ No
☐ Yes. ..................... Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
☒ No
☐ Yes............ Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
☒ No
☐ Yes............ Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):


Software Copyright (c) 1996-2026 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

Debtor 1 Francine Keahon Case number *(if known)* 26-22625

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
☒ No
☐ Yes. Give specific information about them...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
☒ No
☐ Yes. Give specific information about them...

27. **Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
☒ No
☐ Yes. Give specific information about them...

**Money or property owed to you?** — **Current value of the portion you own?** Do not deduct secured claims or exemptions.

28. **Tax refunds owed to you**
☒ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

29. **Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
☒ No
☐ Yes. Give specific information......

30. **Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else
☒ No
☐ Yes. Give specific information..

31. **Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
☐ No
☒ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| State Farm Life and Accident Assurance Co. | Robert Keahon | $4,000.00 |

32. **Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
☒ No
☐ Yes. Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue
☒ No
☐ Yes. Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
☒ No
☐ Yes. Describe each claim.........

35. **Any financial assets you did not already list**
☒ No
☐ Yes. Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here.......................................................................................................** $7,274.32

**Part 5: Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**


Software Copyright (c) 1996-2026 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

Debtor 1 Francine Keahon Case number *(if known)* 26-22625

37. **Do you own or have any legal or equitable interest in any business-related property?**
☒ No. Go to Part 6.
☐ Yes. Go to line 38.

**Part 6:** **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**
If you own or have an interest in farmland, list it in Part 1.

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
☒ No. Go to Part 7.
☐ Yes. Go to line 47.

**Part 7:** **Describe All Property You Own or Have an Interest in That You Did Not List Above**

53. **Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership
☒ No
☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ..................................... $0.00

**Part 8:** **List the Totals of Each Part of this Form**

| | | | | |
|---|---|---|---|---|
| 55. | **Part 1: Total real estate, line 2** ........ | | | $745,000.00 |
| 56. | **Part 2: Total vehicles, line 5** | $0.00 | | |
| 57. | **Part 3: Total personal and household items, line 15** | $2,000.00 | | |
| 58. | **Part 4: Total financial assets, line 36** | $7,274.32 | | |
| 59. | **Part 5: Total business-related property, line 45** | $0.00 | | |
| 60. | **Part 6: Total farm- and fishing-related property, line 52** | $0.00 | | |
| 61. | **Part 7: Total other property not listed, line 54** | + $0.00 | | |
| 62. | **Total personal property.** Add lines 56 through 61... | $9,274.32 | Copy personal property total | $9,274.32 |
| 63. | **Total of all property on Schedule A/B.** Add line 55 + line 62 | | | $754,274.32 |


Software Copyright (c) 1996-2026 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

# EXHIBIT

# E

## Reinstatement Balance - [redacted]

### LOAN DETAILS

| | |
|---|---|
| LoanID: | [redacted]0226 |
| Due Date: | 8/1/2024 |
| Current Principal Balance: | $522,316.60 |
| Escrow Balance: | ($49,770.77) |
| Unapplied Balance: | $0.00 |
| Late Charge Balance: | $353.83 |
| NSF Fee Balance: | $0.00 |
| Legal Fee Balance: | $7,291.50 |
| Accrual Balance: | $0.00 |
| Other Fees Balance: | $1,194.84 |
| Figure Good Thru Date: | **9/22/2026** |

### BORROWER INFO

| | |
|---|---|
| Primary Borrower Name: | KEAHON, ROBERT |
| Co Borrower Name: | Keahon, Francine |

### REINSTATEMENT FIGURES

| | |
|---|---|
| Total PITI Payments Due: | $110,842.06 |
| Default Interest Due: | |
| Total Corp Adv/Late/NSF/Atty Fees: | $8,840.17 |
| Unapplied Balance: | $0.00 |
| Escrow Required: | $0.00 |
| Outstanding FC Fees & Costs: | $0.00 |
| **Total Reinstatement Figure*:** | **$119,682.23** |

*(Total PITI + Fees + Unapplied + Escrow Required + FC Fees & Costs)

The account may not be funded for the coming year

**Please add any outstanding foreclosure fees and costs to this reinstatement

shellpoint

**PAYMENTS DUE DETAIL**

| Due Date | Interest Rate | Prin & Int Pmt | Escrow Pmt | Total Payment | Principal Amount | Interest Amount | Principal Bal |
|---|---|---|---|---|---|---|---|
| 8/1/2024 | 3.000% | $2,028.39 | $2,144.33 | $4,172.72 | $722.60 | $1,305.79 | $521,594.00 |
| 9/1/2024 | 3.000% | $2,028.39 | $2,144.33 | $4,172.72 | $724.40 | $1,303.99 | $520,869.60 |
| 10/1/2024 | 3.000% | $2,028.39 | $2,144.33 | $4,172.72 | $726.22 | $1,302.17 | $520,143.38 |
| 11/1/2024 | 3.000% | $2,028.39 | $2,144.33 | $4,172.72 | $728.03 | $1,300.36 | $519,415.35 |
| 12/1/2024 | 3.000% | $2,028.39 | $2,144.33 | $4,172.72 | $729.85 | $1,298.54 | $518,685.50 |
| 1/1/2025 | 3.000% | $2,028.39 | $2,144.33 | $4,172.72 | $731.68 | $1,296.71 | $517,953.82 |
| 2/1/2025 | 3.000% | $2,028.39 | $2,144.33 | $4,172.72 | $733.51 | $1,294.88 | $517,220.31 |
| 3/1/2025 | 4.000% | $2,326.53 | $2,144.33 | $4,470.86 | $602.46 | $1,724.07 | $516,617.85 |
| 4/1/2025 | 4.000% | $2,326.53 | $1,789.56 | $4,116.09 | $604.47 | $1,722.06 | $516,013.38 |
| 5/1/2025 | 4.000% | $2,326.53 | $1,789.56 | $4,116.09 | $606.49 | $1,720.04 | $515,406.89 |
| 6/1/2025 | 4.000% | $2,326.53 | $1,841.93 | $4,168.46 | $608.51 | $1,718.02 | $514,798.38 |
| 7/1/2025 | 4.000% | $2,326.53 | $1,841.93 | $4,168.46 | $610.54 | $1,715.99 | $514,187.84 |
| 8/1/2025 | 4.000% | $2,326.53 | $1,841.93 | $4,168.46 | $612.57 | $1,713.96 | $513,575.27 |
| 9/1/2025 | 4.000% | $2,326.53 | $1,841.93 | $4,168.46 | $614.61 | $1,711.92 | $512,960.66 |
| 10/1/2025 | 4.000% | $2,326.53 | $1,841.93 | $4,168.46 | $616.66 | $1,709.87 | $512,344.00 |
| 11/1/2025 | 4.000% | $2,326.53 | $1,841.93 | $4,168.46 | $618.72 | $1,707.81 | $511,725.28 |
| 12/1/2025 | 4.000% | $2,326.53 | $1,841.93 | $4,168.46 | $620.78 | $1,705.75 | $511,104.50 |
| 1/1/2026 | 4.000% | $2,326.53 | $1,841.93 | $4,168.46 | $622.85 | $1,703.68 | $510,481.65 |
| 2/1/2026 | 4.000% | $2,326.53 | $1,841.93 | $4,168.46 | $624.92 | $1,701.61 | $509,856.73 |
| 3/1/2026 | 4.875% | $2,597.99 | $1,841.93 | $4,439.92 | $526.70 | $2,071.29 | $509,330.03 |
| 4/1/2026 | 4.875% | $2,597.99 | $1,841.93 | $4,439.92 | $528.84 | $2,069.15 | $508,801.19 |
| 5/1/2026 | 4.875% | $2,597.99 | $1,841.93 | $4,439.92 | $530.99 | $2,067.00 | $508,270.20 |
| 6/1/2026 | 4.875% | $2,597.99 | $1,925.53 | $4,523.52 | $533.14 | $2,064.85 | $507,737.06 |
| 7/1/2026 | 4.875% | $2,597.99 | $1,925.53 | $4,523.52 | $535.31 | $2,062.68 | $507,201.75 |
| 8/1/2026 | 4.875% | $2,597.99 | $1,925.53 | $4,523.52 | $537.48 | $2,060.51 | $506,664.27 |
| 9/1/2026 | 4.875% | $2,597.99 | $1,925.53 | $4,523.52 | $539.67 | $2,058.32 | $506,124.60 |
| | | | Total Payments Due: | $110,842.06 | Count: | 26 | |

**Please add any outstanding foreclosure fees and costs to this reinstatement

**shellpoint.**